<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, *et al.,*    : | |
|         : | Civil Action No. 03-1882 (SDW) |
|       Plaintiffs,      : | |
|         : | |
| v.         : | |
|         : | |
| BANK ONE, N.A., *et al.,*    : | |
|         : | |
|       Defendants.    : | |

METROPOLITAN LIFE INSURANCE
COMPANY, *et al.,*

      Plaintiffs,

v.

BANK ONE, N.A., *et al.,*

      Defendants.
_____

LLOYDS TSB BANK PLC,

      Plaintiff,

v.

BANK ONE, N.A., *et al.,*

      Defendants.
_____

Civil Action No. 03-1882 (SDW)

Civil Action No. 03-2784 (SDW)

**OPINION**

September 25, 2012

**WIGENTON,** District Judge.

Before the Court are the motions of Defendants Credit Suisse Securities (USA) LLC,

formerly known as Credit Suisse First Boston, and Credit Suisse AG, New York Branch, formerly

known as Credit Suisse First Boston, New York Branch ("Credit Suisse NYB") (sometimes

collectively, "Credit Suisse"), to transfer venue of the two captioned actions entitled <u>Metropolitan</u>

<u>Life Insurance Co., et al. v.  Bank One, et al.</u>, Civ. No. 03-1882 (SDW) ("MetLife action") and

Lloyds TSB Bank, Inc. v. Bank One, et al., Civ. No. 03-2784 (SDW) ("Lloyds action"), to the United

States District Court for the Southern District of New York pursuant to a forum selection clause and

28 U.S.C. § 1404(a).  (Dkt. Entry 55 in the MetLife action; Dkt. Entry 93 in the Lloyds action).

Plaintiffs Metropolitan Life Insurance Company, Metropolitan Tower Life Insurance Company,

successor by merger to Metropolitan Insurance and Annuity Company (collectively "MetLife"),

along with Lloyds TSB Bank PLC ("Lloyds"), respectively, oppose these motions.  This matter is

decided without oral argument pursuant to Fed. R. Civ. P. 78.

    After considering the arguments in support of and in opposition to the motions, and for good

cause shown, and for the reasons expressed below, Credit Suisse's motions to transfer venue to the

Southern District of New York are **GRANTED**.[1]


## I.    BACKGROUND

    MetLife and Lloyds brought these two securities fraud actions against Credit Suisse as well

as several other institutional and individual defendants.  The two Metlife plaintiffs are New York

and Delaware corporations, respectively, with their principal places of business in New York.

Lloyds is a British company with its principal place of business in London, England.  Credit Suisse

is a New York company, with its headquarter in New York.

    The Court highlights the following allegations as they relate to the instant motions to

transfer.  According to Plaintiffs, National Century Financial Enterprises, Inc. ("NCFE"), a privately

held finance company, provided financing to healthcare providers by purchasing their accounts

---

[1] In light of the Court's rulings herein, the Court does not reach the merits of the cross-
motions to consolidate the two actions filed on behalf of MetLife and Lloyds.

receivable.  To generate funds to purchase the accounts receivable, NCFE created special purpose entities, N.F. XII and N.F. IV, Inc., (sometimes collectively the "NCFE entities") that issued asset-backed securities ("N.F. Notes") secured by the receivables.

Credit Suisse was a placement agent that sold N.F. Notes to various investors, including Plaintiffs.  From June 2001 through July 2002, through its New Jersey based Asset Backed Securities ("ABS") Unit, the MetLife plaintiffs purchased N.F. Notes, totaling $121 million.

In March 2011, Lloyds purchased $60 million in N.F. XII 2001-1 Series Notes ("XII 2001-Notes") from Credit Suisse.  That same month, Lloyds entered into a Participation Agreement with Credit Suisse, under which Lloyds assumed a $68 million undivided interest in the N.F. XII 2000-4 variable funding note ("VFN"), issued by NCFE and backed by healthcare receivables held by N.F. XII.  Lloyds then purchased from Credit Suisse Bank its percentage interest in the VFN pursuant to the Participation Agreement for $68 million.  The Participation Agreement designates the Southern District of New York as the exclusive forum for any action against Credit Suisse relating to the Participation Agreement.  Additionally, a choice of law provision designates that New York law governs any claim stemming from the Participation Agreement.

According to Plaintiffs, Credit Suisse unlawfully induced Plaintiffs to purchase the N.F. Notes and an undivided interest in those notes based on false representations regarding how the NCFE entities were conducting their business.  Plaintiffs further allege that Credit Suisse had failed to disclose material information to Plaintiffs, as investors, about NCFE's financial problems and fraudulent scheme.

Plaintiffs specifically allege that NCFE's fraud involved advancing money to healthcare providers, without actually receiving eligible healthcare receivables in return.  As alleged by

Plaintiffs, NCFE used the proceeds of the N.F. Note issuances to extend unsecured credit to companies associated with NCFE insiders, and to misappropriate funds for the benefit of NCFE insiders.  Additionally, Plaintiffs allege that the N.F. Notes were never appropriately collateralized as required.  These fraudulent practices resulted in Plaintiffs' N.F. Notes, and undivided interest in those Notes, to substantially decrease in value.

MetLife and Lloyds originally filed the instant actions in this Court.  They are two of five related actions that remain pending against Credit Suisse.  Similar suits were filed in several other courts in Arizona, Florida, Louisiana, New York and Ohio.  The Judicial Panel on Multidistrict Litigation (the "MDL Panel") transferred all of the actions, pursuant to 28 U.S.C. § 1407, to the Southern District of Ohio before Judge James L. Graham for consolidated pretrial proceedings as they involved common questions of facts and coordination - specifically an alleged fraud scheme by NCFE.  Most of the other actions were resolved during the consolidated pretrial proceedings through settlement or court rulings.  Following Judge James L. Graham's rulings on Credit Suisse's summary judgment motion, only Lloyds' and MetLife's 10b-5 securities fraud and common law fraud claims as well as MetLife's New Jersey Uniform Securities Laws (i.e., "New Jersey Blue Sky Law") claims against Credit Suisse remain.  Additionally, similar claims remain against defendant Lance Poulsen ("Poulsen"), former NCFE CEO.  Finally, similar 10b-5 and common law fraud claims raised in three Arizona actions remain.

At the conclusion of the consolidated pretrial proceedings, the MDL Panel remanded the remaining actions back to their originating districts, New Jersey and Arizona.  On July 27, 2012, Judge Graham granted Credit Suisse's respective motions to transfer the three Arizona actions to the

Southern District of New York.[2]

Credit Suisse now seeks to transfer both actions to the Southern District of New York under the Participation Agreement's forum selection clause and 28 U.S.C. § 1404(a).


## II.   ANALYSIS

### A.   Legal Standard

Section 1404(a) permits a district court to transfer a case to any other district where venue is proper, such as here, "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. §1404(a).  A decision to transfer venue is based on "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins., 55 F.3d 873, 879 (3d Cir. 1995). The party seeking transfer bears the burden of establishing that transfer is necessary.  Id.  The moving party must "show the proposed alternative forum is not only adequate, but also more appropriate than the present forum." Hoffer v. Infospace.com, Inc., 102 F. Supp. 2d 556, 572 (D.N.J. 2000).  The parties' execution of a contract containing a forum selection clause is a "significant factor that figures centrally in the district court's calculus." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

The decision of whether to transfer a case is committed to the trial court's sound discretion. Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000).  A reviewing court must first ascertain whether the action could have been properly brought in the transferee district.

---

[2]Judge Graham has accepted an intercircuit assignment to preside over the matters remanded to the District of Arizona, given his extensive involvement and familiarity with the litigation.  It is anticipated that an intercircuit assignment would also take place when the instant matters are transferred to the Southern District of New York.

Id.; See Shutte v. Armco Steel Corp., 431 F.2d 22, 23-24 (3d Cir. 1970).  The movant must demonstrate "the propriety of venue in the transferee district and jurisdiction over all of the defendants."  LG Elecs., Inc. v. First Int'l Computer, Inc., 138 F. Supp. 2d 574, 586 (D.N.J. 2001).

After the court determines that jurisdiction and venue would be proper in the transferee district, the court, then, must consider the validity of any disputed forum selection clause.  Jumara, 55 F.3d at 879-80.  When a plaintiff freely enters into a contract for a specific venue, deference then should not be given to a subsequent choice of a different forum.  Id. at 880.  Additionally, when the forum selection clause is valid, the party resisting its enforcement has the burden of showing that the choice of forum should not be enforced.  See id.

Even though the forum selection clause is presumptively valid, the Court still must consider two categories of factors.  See Jumara , 55 F.3d at 879-80.  The first category includes considerations relevant to the private interests of the litigants.  Id. at 879.  Important private interests are: (1) "plaintiff's forum preference;"  (2) "defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum."  Id. (internal citations omitted).

The second category includes the public's interests in a fair and efficient administration of justice.  Jumara, 55 F.3d at 879-80.  Considerations here include: (1) "the enforceability of the judgment;" (2) "practical considerations that could make the trial easy, expeditious, or inexpensive;"

(3) "the relative administrative difficulty in the two fora resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" (5) "the public policies of the fora;" and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." Id. (internal citations omitted).

Neither list of factors is exhaustive. Rather, the analysis under Section 1404(a) is flexible and individualized, based on the unique facts of each case. Lawrence v. Xerox Corp., 56 F. Supp.2d 442, 450 (D.N.J. 1999). Where there is an MDL proceeding, § 1404(a) motions are most appropriately raised once the MDL Panel has remanded an action to the originating court as has been done here. See Lexicon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 39 (1998) ("[O]n any view of § 1407(a), if an order may be made under § 1404(a), it may be made after remand of the case to the originating district court") (footnote omitted); see also In re Patenaude, 210 F.3d 135, 145-46 (3d Cir. 2000); Shah v. Pan Am. World Servs., Inc., 148 F. 3d 84, 89-90 (2d Cir. 1998).

B.     Jurisdiction and Venue of the Transferee District

There is no dispute that venue is proper in this District, pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78aa (the "Exchange Act"), as well as the general federal venue statute, 28 U.S.C. § 1391. The Exchange Act also provides for nationwide service of process. See 15 U.S.C. § 78aa.

Based on this provision, there is no dispute that the action is properly venued in this District or that this Court can exercise personal jurisdiction over Credit Suisse. The Court finds that the Southern District of New York is a district where this action might have been brought. There is no dispute that the Southern District of New York has the requisite jurisdiction over this case, is a proper venue to adjudicate this case, and thus is a proper alternative forum. Rather, Plaintiffs dispute

7

transferring the action based on the forum selection clause in the MetLife action as well as convenience of the parties and in the interests of justice in both actions.

### C.     Validity of the Forum Selection Clause in the Lloyds Action

While forum selection clauses should not receive dispositive weight in transferring fora, Jumara, 55 F. 3d at 880 (citing  Stewart Org.,Inc., 487 U.S. at 29-31, in the Third Circuit, "[f]orum selection clauses are entitled to great weight and are presumptively valid."  Wall St. Aubrey Golf, LLC v. Aubrey, 189 F. App'x 82, 85 (3d Cir. 2006).  To avoid application of a valid forum selection clause, the resisting party must establish "(1) that it is the result of fraud or overreaching; (2) that enforcement would violate a strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in a jurisdiction so seriously inconvenient as to be unreasonable."  Moneygram Payment Sys. v. Consorcio Oriental, S.A.,  65 F. App'x 844, 846 (3d Cir. 2003) (internal citation omitted).

Here, Lloyds does not dispute the validity of the forum selection clause in the Participation Agreement.  Rather, Lloyds asserts that it cannot be enforced because the clause governs 10b-5 claims only arising from the Participation Agreement.  Additionally, Lloyds asserts that defendant Poulsen in the Lloyds action is not a party to the Participation Agreement.  This Court agrees.

In similar circumstances, courts have declined to enforce a forum selection clause that applied to some but not all of the claims asserted in the case, as long as the plaintiff's claims were not brought simply to evade the forum selection clause.  See, e.g., Farmland Indus., Inc. v. Frazier–Parrott Commodities, Inc.,  806 F.2d 848, 852 (8th Cir. 1986) (affirming the District Court's refusal to transfer venue on the basis of a forum selection clause where plaintiff's suit was broader than the clause); Pegasus Transp. v. Lynden Air Freight, 152 F.R.D. 574, 577 (N.D. Ill. 1993)

(holding that "where a plaintiff's suit is truly broader than the forum selection clause and the structure of the complaint is not an attempt to avoid the forum selection clause, enforcement of the forum selection clause would be unreasonable.").

Here, there is no evidence, nor does Credit Suisse contend that Lloyds has asserted any of its claims only to evade the forum selection clause. Credit Suisse also does not dispute that Lloyds' 10b-5 and common law fraud claims arising from the XII 2001-1 Note purchases are not governed by the forum selection clause. Rather, Credit Suisse argues that all of Lloyds' claims whether or not they are governed by the forum selection clause should be transferred. Credit Suisse attempts to distinguish those cases wherein the courts have declined to transfer actions based on a forum selection clause governing only some claims. According to Credit Suisse, in those cases, the "main claim" at issue was broader than those claims stemming from the contract containing the forum selection clause.

This Court is not persuaded. First, defendant Poulsen is not a party to the Participation Agreement, and thus is not bound by the forum selection clause. Additionally, Lloyds' claims, arising from the XII 2001-1 Note purchase, involve a completely separate transaction than those 10b-5 claims arising from the VFN note purchases under the Participation Agreement. Lastly, those 10b-5 and fraud claims not governed by the forum selection clause are based on several different legal theories with separate damages. In short, the Court finds that the Lloyds action is broader in scope than the forum selection clause, and thus the clause should not be enforced.

Accordingly, the Court denies Credit Suisse's motion to transfer venue of the Lloyds action based on the forum selection clause. Nonetheless, the Court must still consider Credit Suisse's alternate basis for transfer under 28 U.S.C. § 1404(a).

### D.     Private Interest Factors

As to the first factor, a plaintiff's choice of forum is given great weight in an analysis under Section 1404(a).[3] See Lony v. E.I. DuPont de Nemours & Co., 886 F.2d 628, 633 (3d Cir. 1989). Here, however, as noted above, Plaintiffs are not New Jersey residents. When the plaintiff chooses a foreign forum rather than its home forum or "when the central facts of a lawsuit occur outside the chosen forum, plaintiff's choice of forum is accorded less weight." NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F. Supp. 2d 317, 321 (D.N.J. 1998). "As a general rule, the preferred forum is that which is the center of gravity of the accused activity." Id.; see Van Cauwenberghe v. Biard, 486 U.S. 517 (1988) (noting that a court determines the origin of a claim by looking to the "locus of the alleged culpable conduct.");  In re Consolidated Parlodel Litigation, 22 F. Supp. 2d 320, 323-24 (D.N.J. 1998) (a plaintiff's choice of forum decreases where "the central facts of a lawsuit occur outside the chosen forum.") (internal quotations and citations omitted). See also Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 481-82 (D.N.J. 1993).

As detailed below, this Court finds that nearly all of Credit Suisse's alleged complicity in the fraud occurred in New York.  Accordingly, the Court finds that while Plaintiffs' choice to litigate this action in New Jersey weighs against transfer, that weight is slight. See e.g., NCR Credit Corp., 17 F. Supp. 2d at 321.

As to the second factor, Credit Suisse prefers to litigate in the Southern District of New York. As such, this factor weighs slightly in favor of transfer.

The third factor, where the claims arose, is the most critical to the Court's analysis.  The

---

[3] The Court notes that in opposing transfer of the Lloyds action plaintiff fails to address all but two of the relevant private interest factors (party preference and witness convenience) and does not address any of the relevant public factors.

inquiry turns on "which forum contains the center of gravity of the dispute, its events, and transactions." Park Inn Int'l, L.L.C. v. Mody Enterprises, 105 F. Supp.2d 370, 377-78 (D.N.J. 2000). Here, the parties' dispute centers on whether Credit Suisse was complicit in NCFE's fraudulent scheme to defraud investors, including Plaintiffs.

MetLife argues that its claims arose in New Jersey because, although Credit Suisse's alleged misrepresentations were made in New York, MetLife's ABS Unit employees received and relied upon by such misrepresentations in New Jersey. According to MetLife, through memoranda, e-mails, phone calls, and live presentations in New Jersey, Credit Suisse made misrepresentations concerning the quality of the Notes and the structure of the note programs.

"When examining claims for misrepresentation on a motion to transfer venue, 'misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received.'" Branthover v. Goldenson, No. 10CV7677, 2011 WL 6179552, at *3 (S.D.N.Y. Dec. 12, 2011) (internal quotation omitted). It is undisputed that Credit Suisse's misrepresentations and omissions causing MetLife's losses were made in New York. See Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994).

Numerous courts have transferred claims to districts where the alleged misrepresentations were made, and not where the alleged misrepresentations were received or relied upon. See e.g., Frato v. Swing Staging, Inc., No. 10-5198, 2011 WL 3625064, at *4 (D.N.J. Aug. 17, 2011) (rejecting argument that "[plaintiff's] Fraud/Misrepresentation Claims arose in New Jersey because [that is where] he relied on Defendants'[] alleged misrepresentations regarding the financial condition of Defendant;" finding claims arose in New York); Purcell Graham, Inc. v. National Bank of Detroit, No. 93 Civ. 8786, 1994 WL 584550, at *4 (S.D.N.Y. Oct. 24, 1994) (transferring to

district where defendant "allegedly made representations or failed to disclose information."). Thus, any phone calls, emails, and memoranda that Credit Suisse made in New York and received by MetLife employees in New Jersey, do not amount to a substantial connection to New Jersey.

In short, as to the MetLife action, the Court finds that the claims arose in, and the center of gravity of the parties' dispute is, New York. Thus, this third factor weighs in favor of transfer.

As to the Lloyds action, New York is undisputedly the location from which Credit Suisse gave materials to Lloyds and where Credit Suisse made alleged misrepresentations to Lloyds. Furthermore, NCFE securities transactions between Lloyds and Credit Suisse took place in New York. New York was Lloyds's center of business as Lloyds accounted the securities transactions to the Structured Finance New York Unit. Significantly, in opposing transfer, Lloyds does not even address this factor let alone state what connection, if any, the claims have to New Jersey. Rather, Lloyds relies on New Jersey's alleged connection to the MetLife action as a basis to deny transfer. In sum, New York has the greater connection to Lloyds' claims. Thus, this third factor weighs in favor transfer.

Fourth, Credit Suisse is located in New York. Thus, it is more convenient for Credit Suisse to litigate in New York. Additionally, Plaintiffs have their principal places of business in New York. However, the convenience of the parties is determined "as indicated by their relative physical and financial condition." Jumara, 55 F.3d at 879. Neither Credit Suisse nor the Plaintiffs have provided evidence or affidavits that traveling the short distance between New York and New Jersey would cause undue financial or physical burden for any party. Thus, party convenience is a neutral factor.

Fifth, in the Third Circuit, the convenience of the witnesses should be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55

F.3d at 879.  Here, Credit Suisse has not provided evidence or affidavits that any of its witnesses would be unavailable to testify in New Jersey.  Credit Suisse argues that witness convenience supports transfer because many of the parties' employees and witnesses are located in New York, while few reside in New Jersey.  (See Dec. of Stephen Scotch-Marmo, attached to Credit Suisse Mov. Bf. at Ex. A in MetLife action).  Credit Suisse contends that the few witnesses located in New Jersey are within the 100-mile subpoena power of the Southern District of New York.  However, the reverse holds true for the witnesses in New York, who are likewise within the 100-mile subpoena power of this Court.  In short, this factor is neutral and does not weigh in any party's favor.

Sixth, the Third Circuit considers "the location of books and records," only "to the extent that the files could not be produced in the alternative forum."  Jumara, 55 F.3d at 879.  Credit Suisse has not provided any evidence that relevant documents would be unavailable in this Court.  Indeed, as Credit Suisse and the Plaintiffs do not dispute, all relevant documents have been produced electronically and thus are easily available in both fora.  Thus, this factor does not weigh in any party's favor.

### E.  Public Interest Factors

Two of the public interest factors warrant transfer: practical considerations and local interest in deciding local controversies at home. First, practical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive.  One practical consideration that supports transfer is efficiency.  "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  Continental Grain Co. v. Barge

FBL-585, 364 U.S. 19, 26 (1960).  There is no dispute that both actions are ready for trial, and that one consolidated trial would conserve judicial resources and avoid the risk of inconsistent judgments.  Yet, Plaintiffs argue that such a practical consideration warrants denial of a transfer.

As noted above, Judge Graham recently transferred the other three related actions from Arizona to the Southern District of New York.  As such, if this Court were to transfer venue to the Southern District of New York, all five actions could then be consolidated and proceed as one action to trial.  Accordingly, transfer is appropriate to avoid the risk of inconsistent judgments against the same defendant arising from a similar set of allegedly fraudulent transactions.

Second, New York's local interest in deciding local controversies at home also supports transfer.  "The public interest factor of the local interest in deciding local issues is intertwined with the private interest factor of where the claim arose."  LG Elecs. Inc.,  138 F. Supp. 2d at 592.  "The location where the claim arose is also a public interest factor because local judges and juries are preferred arbiters of events in their jurisdiction and community."  Id.

Here, as noted above, New York is the center of gravity for Plaintiffs' claims.  New York has a compelling interest in adjudicating this controversy and regulating the conduct of its corporations and the activities of corporate officers working for corporations which conduct business in that state.  HAB Carriers, Inc. v. Arrow Truck Sales, Inc., No. 07-4390, 2009 WL 2589108, at *4 (D.N.J. Aug. 21, 2009) ("A state has a compelling interest in regulating its businesses or in litigating matters that arise from action occurring within its jurisdiction").  This principle holds even more significance in the MetLife action which involves a New York seller (Credit Suisse) and New York purchasers (the Metlife plaintiffs).

Additionally, New York has a special interest in bank fraud litigation as the nation's financial

14

capital.  See, e.g. Unicredito Italiano v. JPMorgan Chase Bank, No. 02-104, 2002 WL 1378226, at

*4 (D. Del. June 26, 2002) (holding that "the primary public interest raised by this case-the ethics

of the banking profession-is more appropriately addressed in New York" as "New York City remains

the financial center of the United States, if not the world");  In re Nat'l Century Fin. Enters., Inc.,

Investment Litig., No. 2:03–md–1565, 2012 WL 685495 at *11 (S.D. Ohio March 2, 2012) (stating

that "New York has the greatest interest in regulating the alleged fraudulent transactions that took

place almost fully within its boundaries").  In short, this factor weighs in favor of transfer.

      As to enforceability of a judgment, Credit Suisse argues that it would be easy to enforce a

judgment in the Southern District of New York because Credit Suisse is located in New York.  In

contrast, MetLife contends that there is no evidence that a judgment would not be enforceable in

either New Jersey or New York, or could not be enforced just as easily in New Jersey.  This Court

agrees.  As such, this Court finds that this factor does not weigh in favor of either forum.

      As to court congestion, Credit Suisse argues that statistics show that the Southern District

of New York, with 493 weighted filings per judgeship, is a less congested fora than the District of

New Jersey, with 559 weighted filings per judgeship.  (See Credit Suisse Mov. Bf. at 13 citing The

Federal Judiciary website. Table X-1A, U.S. District Courts).  MetLife contends that while these

statistics refer to how long a case takes to resolve from start to finish, the statistics do not

differentiate between how long it takes an action to be tried in either court, as opposed to being

disposed of by motion or settlement.  Furthermore, Credit Suisse does not clarify whether these

statistics refer to civil cases, criminal cases, or both.  Here, the actions are ready for trial.  However,

the evidence does not demonstrate that judges in New Jersey have a greater docket, and thus more

cases to resolve in New Jersey.  Accordingly, this Court finds that this factor is neutral.

As to public policy considerations, Credit Suisse argues that Plaintiffs' claims implicate New York public policy because the claims involve securities transactions between New York businesses, which took place in New York. However, Credit Suisse fails to identify any specific public policy in New York that is implicated. Additionally, Credit Suisse argues that New Jersey and New York's policies of enforcing forum selection clauses weigh in favor of transfer of Lloyds' claims. However, as described above, the forum selection clause in the Participation Agreement is not enforceable.

As to the final factor, there is no dispute that New York law applies to Plaintiffs' common law fraud claims and that New Jersey law applies to MetLife's New Jersey Blue Sky law claim. Federal law will govern the federal securities law claims. In short both federal as well as New York and New Jersey laws govern the parties' dispute. Yet, the Court notes that "federal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit." Yocham v. Novartis Pharm. Corp., 565 F. Supp. 2d 554, 560 (D.N.J. 2008). As such, the federal courts in both this District and the Southern District of New York are equally familiar with the legal principles underlying the common law claims and federal claims necessary to resolve these two cases. Therefore, on balance, this factor does not weigh decidedly in any party's favor.

## III.    CONCLUSION

Having considered the parties' submissions, having good cause, and for the reasons set forth above, this Court concludes that Credit Suisse has proven that this matter should be litigated in New York. This case has such significant ties to New York, and thus, on balance, the competing public and private interests weigh in favor of transferring this action to the District Court for the Southern District of New York. Accordingly, Credit Suisse's respective motions to transfer the action to the

16

Southern District of New York, (Dkt. Entry No. 55 in the MetLife action; Dkt. Entry No. 93 in the

Lloyds action), are **GRANTED**, pursuant to 28 U.S.C. § 1404(a).  In light of the Court's rulings

herein, Plaintiffs' Cross-Motions to Consolidate the two actions (Dkt. Entry 59 in the MetLife

action; Dkt. Entry 98 in the Lloyds action), are **DISMISSED WITHOUT PREJUDICE AS**

**PREMATURE.**


S/SUSAN D. WIGENTON
United States District Judge


cc:    Madeline Cox Arleo, U.S.M.J.
       Clerk of the Court
       Parties

17